UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


NEWELL BARNETT,

                          Petitioner,

-vs-                                                    Case No.  8:05-cv-1342-T-24EAJ

JAMES R. MCDONOUGH,

                          Respondent.

_____

## ORDER

     This cause is before the Court on Petitioner Newell Barnett's 28 U.S.C. § 2254

petition for writ of habeas corpus.  Petitioner is proceeding on his amended petition (Doc.

No. 8) (hereinafter "petition").  Barnett challenges his conviction and sentence entered by

the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida.  A review of the

record demonstrates that, for the following reasons, Barnett's petition for writ of habeas

corpus must be **DENIED**.

PROCEDURAL BACKGROUND

     On April 18, 2000, Barnett was charged by Information with one count of robbery.

(Vol. 1: R 4-5).[1] The case proceeded to jury trial on August 28 and 31, 2000. Barnett was

_____

     [1] The three-volume record on direct appeal is attached as Respondent's Exhibit 35. References to
the documents and pleadings found in Volume 1 of the record utilize the letter "R," followed by the page
number located in the lower right hand corner of the page. The trial transcript is contained in Volume 2, and
is paginated separately in the upper right hand corner of the page, numbering from 1 to 114.

represented by private counsel, Baron Givens, Esquire. (Vol. 1: R 14-16). The jury returned a verdict of guilty as charged. (Vol. 1: R 33; Vol. 2: T 108-109).

On October 6, 2000, the state trial court found that Barnett qualified as both a prison releasee reoffender and a habitual offender. The state trial court imposed a habitual offender sentence of thirty years incarceration with a fifteen-year minimum mandatory concurrent sentence because Barnett was a prison releasee reoffender. (Vol. 1: R 128-133).

Barnett appealed his conviction and sentence. The Assistant Public Defender assigned to represent Barnett filed an Anders[2] brief, stating that she could find no meritorious argument to support the contention that the state trial court committed significant reversible error. (Exhibit 1). Counsel directed the state district court of appeal's attention to two potential issues for review: (1) Whether the conviction for robbery was supported by legally sufficient evidence; (2) whether the sentence imposed was lawful.

After being invited to do so by the state district court of appeal, Barnett filed a pro se initial brief and attached documents to bolster appellate counsel's issue that the evidence was insufficient to support the robbery conviction. (Exhibit 2). The State filed an answer brief addressing the sufficiency of the evidence issue only. (Exhibit 3). On September 7, 2001, in Case No. 2D00-4488, the state district court of appeal per curiam affirmed Barnett's conviction and sentence. (Exhibit 4). Barnett v. State, 799 So. 2d 1031 (Fla. 2d DCA 2001)[Table].

---

[2] Anders v. California, 386 U.S. 738 (1967).

-2-

On June 4, 2002, Barnett filed a rule 3.850 pro se motion for postconviction relief raising seventeen claims, including fourteen allegations of ineffective assistance of trial counsel. (Exhibit 6).   On October 14, 2002, the state trial court summarily denied all grounds. (Exhibit 7). On October 31, 2002, Barnett filed a motion for rehearing (Exhibit 8), which the state trial court denied on November 19, 2002. (Exhibit 9).

Barnett appealed the denial of postconviction relief. (Exhibit 10).  On September 12, 2003, in Case No. 2D02-5612, the state district court of appeal per curiam affirmed the state trial court's denial of postconviction relief. (Exhibit 11). Barnett v. State, 856 So. 2d 987 (Fla. 2d DCA 2003)[Table].

On September 29, 2003, in Case No. 2D03-4488, Barnett filed a state habeas corpus petition alleging ineffective assistance of appellate counsel on direct appeal. (Exhibit 13). Barnett alleged his appellate counsel was ineffective for failing to: (1) challenge the arrest warrant based on lack of probable cause; (2) challenge an alleged conflict of interest under which defense counsel operated; (3) challenge whether Barnett knowingly waived any  conflict of interest on the part of defense counsel; (4) raise the claim that the State deliberately took advantage of defense counsel's alleged conflict of interest. As directed by the state district court of appeal, the State filed a response to the petition for writ of habeas corpus. (Exhibit 14).  Barnett filed a reply to the State's response. (Exhibit 15). On April 2, 2004, in Case No. 2D03-4488, the state district court of appeal denied the petition. (Exhibit 16). Barnett filed a motion for rehearing (Exhibit 17), which the state district court of appeal denied on July 19, 2004. (Exhibit 18).

On May 10, 2004, Barnett filed a "Motion for Relief from Judgment" from the denial of his rule 3.850 motion. (Exhibit 19). Barnett asked the state trial court to reconsider and set aside its prior order denying postconviction relief as to the ground alleging a conflict of interest with his counsel,  and to grant Barnett leave to amend the postconviction motion to utilize newly discovered evidence. Barnett claimed that the Clerk of Court supplied him with false information in response to his request for case numbers and docket sheets relating to Robert Trolian when he was preparing his prior motion for postconviction relief. On June 8, 2004, the state trial court denied relief:

> Review of the Defendant's present motion and his attachments fails to reveal any "false" information supplied by the Clerk. The Clerk supplied the information it had in response to the Defendant's request and in no way falsified or concealed any information. Defendant now seeks to reargue his "conflict of interest" alleged as Ground B in his prior motion. This Court rejected all of the Defendant's arguments about this alleged conflict in its prior Order. In his present motion, the Defendant provides no basis upon which the Court should vacate its prior Order, which was affirmed by the Second District Court of Appeal.

(Exhibit 20)

Barnett filed a motion for rehearing. (Exhibit 21). The state trial court denied the motion on July 12, 2004. (Exhibit 22). Barnett appealed. On October 27, 2004, in Case No. 2D04-3233, the state district court of appeal per curiam affirmed the denial of relief. (Exhibit 23). Barnett v. State, 887 So. 2d 334 (Fla. 2d DCA 2004)[Table].

On September 17, 2004, before the second Rule 3.850 proceeding became final, Barnett filed a second petition for writ of habeas corpus in the state district court of appeal. That court treated the petition as a petition alleging ineffective assistance of appellate

counsel. (Exhibit 25). On November 1, 2004, in Case No. 2D04-4242, the state district court of appeal dismissed the petition. (Exhibit 26).

On September 7, 2004, Barnett filed a motion to set aside the judgment based on newly discovered evidence. (Exhibit 27). On September 28, 2004, the state trial court dismissed the motion, without prejudice, for lack of jurisdiction due to the pending appeal from the order denying the prior postconviction motion. (Exhibit 28). Barnett filed a motion for rehearing on October 12, 2004. (Exhibit 29). This motion was denied by the state trial court on October 21, 2004. (Exhibit 30). Barnett appealed the order dismissing his motion to set aside the judgment. On April 6, 2005, in Case No. 2D04-4945, the state district court of appeal per curiam affirmed the dismissal of the motion to set aside the judgment. (Exhibit 31). Barnett v. State, 906 So. 2d 1066 (Fla. 2d DCA 2005)[Table]. Barnett filed a motion for rehearing (Exhibit 32), which the state district court of appeal denied on April 25, 2005. (Exhibit 33).

THE PRESENT PETITION

Barnett timely filed the original federal petition on July 18, 2005. (Doc. No. 1). This Court dismissed the petition without prejudice on July 20, 2005. and the Court instructed Barnett to file an amended petition. (Doc. No. 3). Barnett filed his amended petition (Doc. No. 8) on October 14, 2005, raising ten grounds for relief:

**Ground One**

DEFENSE COUNSEL'S PRIOR AND SIMULTANEOUS REPRESENTATION OF STATE WITNESS ROBERT TROLIAN IN A CASE SUBSTANTIALLY RELATED TO THE PETITIONER'S CREATED AN ACTUAL ETHICAL CONFLICT OF INTEREST WHICH ADVERSELY AFFECTED COUNSEL'S REPRESENTATION OF THE PETITIONER, DENYING HIM HIS

FEDERALLY PROTECTED RIGHT TO EFFECTIVE CONFLICT FREE COUNSEL AS CONTEMPLATED BY THE 6TH AMENDMENT, UNITED STATES CONSTITUTION.

### Ground Two

COUNSEL'S CONFLICT OF INTEREST COMPELLED COUNSEL TO ASSIST THE STATE IN INTENTIONALLY STAGING AN OVERLY SUGGESTIVE SHOW-UP PROCEDURE PRIOR TO TRIAL FOR THE PURPOSE OF CHANGING THE BANK HEAD TELLER'S IDENTIFICATION OF BARNETT NOT LOOKING LIKE THE SUSPECT AND UNFAIRLY CONVINCE HER BARNETT WAS THE SUSPECT.

### Ground Three

BY COUNSEL INTENTIONALLY STAGING AN ILLEGAL OVERLY SUGGESTIVE SHOW UP OF HIS CLIENT TO INTENTIONALLY DESTROY TESTIMONIAL EVIDENCE IN HIS FAVOR, COUNSEL CREATED A SELF INTEREST CONFLICT WHICH COMPELLED HIM TO DECEIVE THE COURT INTO THINKING THE PROCEDURE WAS AN ACCIDENT THAT THE TWO WITNESSES HAD BRIEFLY AND ACCIDENTALLY SEEN BARNETT WHILE SHACKLED.

### Ground Four

COUNSEL'S CONFLICT OF INTEREST COMPELLED COUNSEL TO REFRAIN FROM ASSERTING BEFORE TRIAL A VIABLE CHALLENGE TO THE STATE'S FINGERPRINT ANALYST'S CONCLUSION THAT PRINTS FOUND ON A HOLD-UP NOTE FOUND AT THE BANK ON THE DAY OF THE ROBBERY BELONGED TO BARNETT.

### Ground Five

THE STATE, SPECIFICALLY JAMES RAWE, KNOWINGLY SUBVERTED THE PETITIONER'S 6TH AMENDMENT RIGHT TO EFFECTIVE CONFLICT FREE COUNSEL, WHICH IN TURN VIOLATED HIS RIGHT TO DUE PROCESS GUARANTEED HIM BY THE 5TH AND 14TH AMENDMENTS.

### Ground Six

BASED ON NEWLY DISCOVERED EVIDENCE, COUNSEL CONNIVED TO HAVE PETITIONER WAIVE HIS RIGHT TO CONFLICT FREE COUNSEL.

### Ground Seven

BASED ON NEWLY DISCOVERED EVIDENCE, COUNSEL DECEIVED THE TRIAL COURT IN THE COURT'S ANALYSIS OF THE CONFLICT.

### Ground Eight

COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL ROBERT TROLIAN TO TRIAL AND QUESTIONING HIM AS TO HIS UNRELIABILITY AND THE INCONSISTENT SELF-SERVING INFORMATION HE GAVE POLICE.

### Ground Nine

COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL DETECTIVE CARPENTER TO TRIAL FOR THE PURPOSE OF DESCRIBING FOR THE JURY THE LOGICAL SEQUENCE OF EVENTS AS TO HOW PETITIONER WAS TARGETED AS A SUSPECT.

### Ground Ten

COUNSEL'S CONFLICT OF INTEREST COMPELLED HIM TO FOREGO THE REASONABLE TRIAL STRATEGY OF HOLDING THE STATE TO THEIR BURDEN OF PROOF.

### STANDARD OF REVIEW

Barnett's federal petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA "establishes a more deferential standard of review of state habeas judgments," Fugate v. Head, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); see also, Bell v. Cone, 543 U.S. 447, 455 (2005)(habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]).

Pursuant to 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. Lockyer v. Andrade, 538 U.S.63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. Mitchell v. Esparza, 540 U.S. 12 (2003); Clark v. Crosby, 335 F.3d 1303, 1308-10 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 139-40 (2005); Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme

Court precedent. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Sec'y for the Dep't. of Corr.</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." <u>Brown v. Payton</u>, 544 U.S. at 141. An objectively unreasonable application of precedent occurs when (1) a state court identifies the correct legal rule but unreasonably applies it to the facts; or (2) a state court either unreasonably extends a legal principle from precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1141 (11th Cir. 2005).

Finally, a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Henderson v. Haley</u>, 353 F.3d 880, 890-91 (11th Cir. 2003).

STANDARD OF REVIEW FOR INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Barnett raises seven separate allegations of ineffective assistance of trial or appellate counsel. In order to prevail on a claim of violation of his Sixth Amendment right to counsel, Barnett must satisfy the two-pronged inquiry of <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 698 (2002)(courts should apply <u>Strickland</u> to claims that counsel failed to satisfy constitutional requirements at specific points). The standards of effective assistance set forth in <u>Strickland</u> apply to appellate counsel, as well as to trial counsel. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987).

First, Barnett must demonstrate that the attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. Second, Barnett must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. Barnett must prove both prongs of <u>Strickland</u>. Therefore, if Barnett fails to establish either deficient performance or prejudice, the court need not address the other prong. <u>Strickland</u>, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,...that course should be followed."); see Sims <u>v. Singletary</u>, 155 F.3d 1297, 1305 (11th Cir. 1998). In this case, the state court's denial of Barnett's ineffective counsel claims is neither contrary to, nor an unreasonable application of, the <u>Strickland</u> standard.

## DISCUSSION

### Ground One

Barnett alleges his trial counsel's prior and simultaneous representation of state witness Robert Trolian in a case substantially related to Barnett's case created an actual ethical conflict of interest which adversely affected counsel's representation of Barnett. The state trial court denied this claim, and the denial of this claim is objectively reasonable:

**Ground B**: Defendant alleges that counsel operated under a conflict of interest because he had previously represented a defendant by the name of Robert Trolian, who provided background information to Detective Carpenter, which ultimately led to the issuance of an arrest warrant for the Defendant. The Defendant's primary problem under this ground is that he has waived any conflict of interest. The Defendant's own motion establishes that he was aware of the fact that counsel had represented Trolian prior to representing him and that representation was in an entirely separate matter. (*See* Defendant's Motion at 11-12). Despite this knowledge, Defendant never moved to disqualify or discharge his counsel, nor did he ever raise this conflict on direct appeal. He cannot now use his postconviction motion as an avenue to attack an issue that should have been raised on direct appeal. *See Oats v. Dugger*, 638 So.2d 20 (Fla. 1994).

Even if the Court considers this ground, however, the Defendant fails to demonstrate that his counsel actively represented conflicting interests at the time and that his performance was adversely affected. In the postconviction context, a defendant alleging a conflict issue must show that the conflict impaired the performance of the defense lawyer. *See Lee v. State*, 690 So.2d 664, 669 (Fla. 1st DCA 1997). Once deficient performance is shown, prejudice is presumed. *Id.* The key factors weighing against any finding of a conflict of interest are that Robert Trolian was *never* used as a witness in this case, nor did counsel ever represent Trolian and the Defendant at the same time. Therefore, no conflict has been demonstrated, and the claim is rejected.[3]

(Order Denying Defendant's Motion for Postconviction Relief [Respondent's Exhibit 7] at

page 4).

Barnett concedes he signed a conflict waiver form during a pretrial hearing after trial

counsel informed the state trial court of counsel's prior representation of Robert Trolian.

Barnett quotes trial counsel as saying:

Your Honor, I would like the court to be aware that I have represented one of the witnesses for the State in the past, Robert Trolian. The

---

[3] Apparently the state trial court was unaware that Barnett waived his right to conflict free counsel and signed a written waiver to that effect prior to trial after being advised by counsel regarding counsel's earlier representation of Trolian.

representation occurred before I represented Mr. Barnett. It was in the past, and the case had nothing to do with this case. I would request the court to inquire of my client.

(See § 2254 petition at page 15). Barnett contends further that the state trial court conducted an inquiry, asking Barnett whether he knew what a conflict was, whether Barnett had discussed the matter with his attorney, whether Barnett was aware he could hire another attorney, and whether Barnett wished to sign a waiver of conflict free counsel. Barnett answered yes to all questions and signed a written waiver. (See § 2254 petition at page 15-16).

In this case, several factors support the state trial court's denial of Barnett's conflict of interest claim. First, Barnett voluntarily waived any conflict of interest claim after counsel explained the situation and the state trial court conducted an inquiry. In United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993)(per curiam), the Eleventh Circuit held that for a waiver to be knowing and intelligent, "the record must show that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel." Id. (internal quotations and citation omitted). "A determination that defendants have waived the right to conflict free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflict of interest." Rodriguez, 982 F.2d at 477.

Second, even in the absence of such a waiver, Barnett cannot show that an actual conflict of interest adversely affected his trial lawyer's performance. In Cuyler v. Sullivan, 446 U.S. 335 (1980), a case involving simultaneous representations, the Supreme Court held that "in order to demonstrate a violation of his Sixth Amendment rights, [the petitioner]

must establish that [1] an actual conflict of interest [2] adversely affected his lawyer's performance." 446 U.S. at 350. Because counsel's representation of Trolian was completed before the representation of Barnett commenced, representation of the two clients was successive rather than simultaneous or multiple. "Successive representation occurs where defense counsel has previously represented a co-defendant or trial witness." United States v. Moss, 323 F.3d 445, 456 n.15 (6th Cir.), cert. denied, 540 U.S. 879 (2003). In Mickens v. Taylor, 535 U.S. 162 (2002), the Supreme Court noted it has never applied the heightened protections from its conflict of interest jurisprudence to cases of successive representation. 535 U.S. at 176.

In the instant case, Barnett cannot show that his trial counsel took any action or refrained from taking any action that would protect the interests of Trolian over the interests of Barnett. Trolian's case was unrelated to Barnett's and Trolian and Barnett were not co-defendants. Most importantly, as emphasized by the state trial court, Trolian did not testify at Barnett's trial. The state trial court's rejection of Barnett's conflict of interest claim is neither contrary to nor an unreasonable application of Supreme Court precedent.

Grounds Two and Three

In ground two, Barnett complains that trial counsel's conflict of interest compelled counsel to assist the State in intentionally staging an overly suggestive show-up procedure in the courtroom prior to trial. The purpose of this show-up procedure, according to Barnett, was to convince a bank teller that Barnett was the robber.

In ground three, Barnett raises a related claim. Both claims were substantially raised in Barnett's postconviction motion as Grounds C and D, and were rejected by the state trial court as procedurally barred and without merit:

> **Ground C**: Defendant alleges that his counsel acted in collusion with the State to give witness, Angela Valverde, another attempt at identifying him in the courtroom prior to trial. As noted by the State in its response, the issue of a tainted identification process was raised in the Anders brief filed on behalf of the Defendant by appellate counsel. (*See* Exhibit H to State's Response). As well, the Defendant filed his own handwritten nine-page supplement to the appellate brief, in which he painstakingly detailed the same errors of which he complains in his present Motion. (*See id.*) The issue is procedurally barred from further review. Postconviction proceedings are not to be used as a second appeal, nor may the Defendant relitigate this issue under the guise of an ineffective assistance of counsel argument. *See Torres-Arboleda v. Dugger*, 636 So.2d 1321, 1323 (Fla. 1994).

> **Ground D**: Defendant alleges that his counsel was ineffective in that he intentionally deceived the trial judge with regard to the "identification procedure" that occurred in the courtroom prior to trial. This issue is directly related to the identification assailed above under Ground C and, for the same reasons, it is procedurally barred from further review.

> Even if the Court were to consider Defendant's claim, however, it would reject the claim. The record conclusively shows that, in moving for a judgment of acquittal, counsel stated what had occurred on the record, i.e., identification tainted by fact of Defendant being brought into [the] courtroom in shackles and handcuffs with Kimberly Sears and Angela Valverde sitting in the courtroom and apparently discussing his identification, witnessed by their heads nodding. (T.T. 72-73) The Court took this into consideration and found that there was sufficient identification of the Defendant based upon Sears' identification of the Defendant in November of 1999 and her subsequent identification in court. (T.T. 74- 75).

(Order Denying Defendant's Motion for Postconviction Relief at pages 9-10).

The state trial court's rejection of this claim is objectively reasonable. On direct appeal, Barnett alleged that just prior to his trial's commencement, the State's two key eye-witnesses, Kimberly Sears and Angela Valverde, observed Barnett enter the courtroom in

shackles and handcuffs. Consequently, during the trial, defense counsel objected to their identification testimony. According to Barnett's counsel, the alleged observation of Barnett in shackles prior to trial tainted the witnesses' in-court identification, and Barnett was entitled to judgment of acquittal as a result of this alleged tainted identification. (Exh 35: Vol. 2: T 72-73).

This argument has no merit and the denial of judgment of acquittal was correct. To violate due process, an identification procedure used by the police must be unnecessarily suggestive and create a substantial risk of misidentification. Neil v. Biggers, 409 U.S. 188 (1972). In Biggers, the Court identified five factors for determining the reliability of an identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

Based on the record in the present case, the state trial court properly denied Barnett's motion for judgment of acquittal based on the identification procedure. While the record arguably shows that witness Valverde did not positively identify Barnett prior to the alleged observation in the courtroom, there is sufficient evidence demonstrating the reliability of witness Sears' identification testimony. Specifically, the record shows that Sears positively identified Barnett from a strip of photographs presented to her on November 15, 1999, the day of the robbery. (Exh 35: Vol. 1: T 24). The record also shows Sears unequivocally identified Barnett as the individual who committed the robbery when a photo-pack, which included Barnett, was presented to her on February 15, 2000. (Exh

35: Vol. 2: T 25). This evidence supports the trial court's determination that Sears' identification testimony was based upon her recollection of what Barnett looked like at the time of the offense and not upon any alleged pretrial observation in the court room.

Even if the trial court erred in allowing Valverde's identification testimony into evidence, the error was harmless beyond a reasonable doubt. As this is a 28 U.S.C. § 2254 habeas case, it is properly analyzed under the harmless error standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). An error requires habeas relief only if it "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 623 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In addition to eye-witness Sears' testimony at Barnett's trial, the record shows the prosecution presented identification evidence of Barnett by way of the bank's video surveillance camera. Moreover, evidence was presented demonstrating that Barnett's palm print and fingerprints were discovered on the teller's counter top as well as on the note used during the robbery. (Exh 35: Vol. 2: T 52-55, 68-70). Under these circumstances, any error in the admission of Valverde's identification testimony was harmless.

### Ground Four

Barnett alleges his counsel's conflict of interest compelled counsel to refrain from asserting before trial a viable challenge to the State's fingerprint analyst's conclusion that a print on a hold-up note found at the bank on the day of the robbery matched Barnett's right thumb print. The state trial court denied Barnett's claim for failure to establish deficient performance or prejudice regarding trial counsel's election not to attempt to suppress the fingerprint evidence:

> **Ground B-2**: Defendant alleges counsel was ineffective for failing to ask for an evidentiary hearing to suppress fingerprint evidence. Defendant seems to suggest that because at one point, Detective DeVries made a notation in his file that the case was open and inactive pending further leads and no suspect had yet been developed, the subsequently developed fingerprint evidence was somehow fabricated to link him to the crime. By necessity, the Defendant's claim is based on unsupported assumptions (*e.g.*, Detective DeVries "surely compared" the prints on the hold up note to those in the sheriff's database) and inaccurate representation of the investigation procedure. Nonetheless, Defendant fails to allege any viable factual basis upon which counsel could conceivably move to suppress the fingerprint evidence. Thus, he cannot demonstrate any deficient performance on counsel's part, and his claim is rejected.

(Order Denying Defendant's Motion for Postconviction Relief at pages 4-5.)

In this instance, Barnett's failure to allege any viable basis for seeking suppression of the fingerprint evidence is fatal to his ineffective assistance of counsel claim. Barnett has not established prejudice, because he has not shown that a motion to suppress the fingerprint evidence would have been successful.

### Ground Five

Barnett alleges that the State, specifically James Rawe, knowingly subverted Barnett's Sixth Amendment right to effective conflict free counsel, which in turn violated his right to due process guaranteed him by the Fifth and Fourteenth Amendments. Barnett alleges the Assistant State Attorney Rawe knew that Barnett's counsel previously represented a material witness, Robert Trolian, who was scheduled to testify against Barnett at trial and whose interests were adverse to Barnett's, yet the prosecutor failed to notify Barnett or the state trial court of this fact. The state trial court found Barnett's argument to be without merit:

**Ground F**: Defendant alleges collusion between his counsel and the State in making a deal with Robert Trolian to testify against him in exchange for leniency while counsel was representing Trolian, and the State did nothing to alert the Defendant as to this "outrageous situation." The major failure in the Defendant's claim is that Robert Trolian never testified against the Defendant in this case. While the information supplied by Trolian did lead to further investigations of the Defendant and his eventual arrest, Trolian never testified. The fact that he may have used this exchange of information to his benefit in his own criminal cases, while relevant to impeach had he been a witness, is entirely irrelevant for purposes of the Defendant's case.

( Order Denying Defendant's Motion for Postconviction Relief at page 10).

Because Trolian did not testify against Barnett, and defense counsel disclosed his past representation of Trolian prior to Barnett's trial, the state trial court's conclusion that Barnett did not suffer any prejudice from the State's failure to advise Barnett of any alleged plea bargaining with Trolian is irrelevant. Consequently, Barnett has shown no violation of due process or other constitutional rights.

GROUND SIX

Barnett complains that, based on newly discovered evidence, trial counsel connived to have Barnett waive his right to conflict free counsel. Barnett concedes he signed a conflict waiver form during a pretrial hearing after trial counsel informed the court of his prior representation of Robert Trolian.

In his present federal petition, Barnett claims he learned subsequently that his attorney misled him and the court because  counsel represented Barnett and Trolian simultaneously. Barnett states he did not raise grounds six and seven in his first rule 3.850 motion in the state trial court because he did not become aware of the "simultaneous" representation until approximately September 28, 2003. (See § 2254 petition, unnumbered

-18-

page).  Barnett asserts he did raise these specific claims in his second, successive motion for postconviction relief based on newly discovered evidence. The state trial court rejected Barnett's newly discovered evidence claim, however, finding that the documents Barnett was relying on did not constitute newly discovered evidence that would merit postconviction relief. (See Respondent's Exhibits 19 and 20). This ruling was affirmed on appeal. (See Respondent's Exhibit 23).

A review of Barnett's postconviction "motion for relief from judgment" filed May 10, 2004, shows Barnett's allegation of "simultaneous" representation is based on attached documents which Barnett interprets as reflecting that Mr. Givens' representation of Trolian ended on July 7, 2000, and counsel's representation of Barnett began on July 10, 2000. (Exhibit 19 at page 3). Not only does Barnett's own factual allegation contradict his contention that counsel engaged in simultaneous representation of the two defendants, but his "newly discovered evidence" does not affect the state court's conclusion that Barnett failed to show an actual conflict of counsel. Moreover, the signed waiver of conflict of counsel was not based on any inaccurate or misleading advice from counsel regarding counsel's past representation of Trolian.

Ground Seven

In a related claim, Barnett alleges that, based on this same newly discovered evidence, counsel deceived the state trial court in the court's analysis of the conflict of interest issue. This claim has no merit.  (See ground six above)

Ground Eight

Barnett contends trial counsel was ineffective for failing to call Robert Trolian to testify and questioning him as to his unreliability and the inconsistent self-serving information he gave police. Again, the state trial court reasonably rejected this allegation:

> **Ground B-7**: Defendant alleges counsel was ineffective for failing to call Robert Trolian as a witness at his trial so he could impeach Trolian's credibility. To the contrary, counsel was effective by not calling Trolian as a witness because Trolian's identification of the Defendant as the perpetrator would have buttressed the identification testimony of Kimberly Sears and made the identification evidence that much stronger in the eyes of the jury. The Defendant's claim has no merit.

(Order Denying Defendant's Motion for Postconviction Relief at pages 7-8).

Trial counsel's failure to call Robert Trolian as a witness did not constitute deficient performance nor result in prejudice inasmuch as Trolian would have bolstered the testimony of the State's identification witness. See Jackson v. Shanks, 143 F.3d 1313, 1320 (10th Cir. 1998) (counsel cannot be deemed ineffective electing not to call a witness where counsel could have reasonably determined that harmful testimony elicited during cross-examination would far outweigh the benefit of testimony elicited during direct examination). The state trial court's decision was not contrary to, nor an unreasonable application of, Strickland v. Washington.

Ground Nine

Barnett also finds fault with trial counsel for failing to call Detective Carpenter to testify regarding a description of the sequence of events as to how Barnett was targeted as a suspect. This claim has no merit. The state trial court reasonably concluded in its order denying relief that Barnett failed to show deficient performance on counsel's part:

**Ground B-5**: Defendant alleges counsel was ineffective for failing to call Detective Carpenter as a witness to show that: (1) she lied and deceived the judge into issuing an arrest warrant; (2) the arrest was predicated on a tip received from a previously convicted con man; and (3) Carpenter told Robert Trolian to suppress information regarding Kim Sears, the bank teller involved in the robbery.

None of these allegations has any merit. As pointed out under Ground A above, there was no basis for challenging the arrest warrant based on probable cause. Carpenter was entitled to rely on hearsay in formulating her affidavit and was not required to identify all of her sources of information. In fact, had counsel called Carpenter as a witness, it is likely she could have brought out the fact that the Defendant had also been identified by a second witness, other than the teller, as the perpetrator of the bank robbery. Such evidence would have been detrimental, rather than helpful, to the Defendant's case. Thus, once again, the Defendant has failed to demonstrate that counsel's performance was deficient.

(Order Denying Defendant's Motion for Postconviction Relief at pages 6-7).

Counsel acted reasonably in declining to call Carpenter as a defense witness, where

Carpenter possessed information that would have harmed Barnett's case.

### Ground Ten

Finally, in ground ten, Barnett alleges counsel's conflict of interest compelled him to

forego the reasonable trial strategy of holding the State to its burden of proof. The state trial

court treated this claim as one of dissatisfaction with counsel's chosen trial strategy and

rejected Barnett's argument for lack of merit:

**Ground B-9**: Defendant alleges counsel was ineffective for "using improper trial strategy," *i.e.*, counsel stipulated that the Defendant committed the crime and failed to challenge any evidence that was admitted during trial. This claim constitutes nothing more than an expression of the defendant's dissatisfaction with counsel's trial strategy.

The clear strategy followed by defense counsel was to attack the identification evidence and to suggest that the State had not proved its case beyond a reasonable doubt by attacking the placing in force/assault/ fear/use

of violence element of the crime of robbery. Hence, the necessity for questions directed at the lack of a bomb or knife during Randy Lamb's testimony (T.T. 48-49) and the questions to Kimberly Sears directed at the placing in fear element of robbery. (T.T. 30- 36) Defendant has failed to demonstrate any prior relationship between Sears and Trolian to support his specious accusation that they "concocted" the robbery, nor has he demonstrated any deficiency in counsel's performance.

(Order Denying Defendant's Motion for Postconviction Relief at pages 8-9).

Defense counsel's theory of defense is demonstrated by his argument in support of

the motion for judgment of acquittal:

MR. GIVENS: Judge, at this time the Defense could move for a judgment of acquittal as to Count 1, the only count, basically on two grounds. Number one, we feel that the identification of Mr. Barnett has been severely tainted by the fact that the two witnesses who identified him in court, one being Kimberly Sears and the other being Angela Valverde, had seen the Defendant enter the courtroom in shackles and in handcuffs. The two were sitting together and apparently discussing the identification because their heads were -- they nodded, and that's important in light of Angela Valverde [sic] never identified the Defendant on a prior occasion looking at a photo-pack.

In conjunction with that, we have the question that there was certainly no evidence of any type of weapon that was seen or observed by anyone that was in the bank, and those statements never were made to any of the victims, to members of law enforcement, that they had ever seen any type of a weapon or any type of object.

Therefore, we are left with the -- solely to establish the offense of robbery with the testimony of Kimberly Sears. And the only thing that she can testify to is fear.

However, we're basically arguing that that testimony can be discredited by the fact that nothing in her statement ever alluded to the term of fear or depicted or set forth any factors of fear. And she was instructed by the policy of the bank to comply with any type of demand for money. Her testimony was that the Defendant, or whoever the assailant was, had their head lowered and did not speak at any time in a loud voice. And even with the presentation of a note, she continued to do exactly what she had been

trained to do without showing any interference or without showing any type of fear.

So based upon there being no evidence other than the testimony which we feel is contradictory to fear, we would move for judgment of acquittal. (Exh 35: Vol. 2: T 72-74).

Clearly, trial counsel utilized a defense strategy in this case seeking acquittal on the robbery charge. A trial counsel's strategic or tactical choices in a criminal case, after a thorough investigation of the law and facts, "are virtually unchallengeable in an ineffective assistance of counsel claim . . ." Strickland, 466 U.S. at 689-690. Moreover, the fact that a chosen strategy or defense was ultimately unsuccessful does not mean that counsel's performance was ineffective. See Zamora v. Dugger, 834 F.2d 956, 959 (11th Cir. 1987)(attorney's tactical decision to employ an insanity defense may not have been successful in retrospect, but Strickland allows trial counsel great latitude to conduct a defense). "The reasonableness of a counsel's performance is an objective inquiry." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000). For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. Under the circumstances of this case, Barnett cannot deny that at least one reasonable attorney could have chosen the defense strategy that the attorney pursued here.

Accordingly, the Court orders:

That Barnett's petition is denied, with prejudice.  The Clerk is directed to enter judgment against Barnett and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 22, 2006.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Newell Barnett

-24-